## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 07-205-2** |
| | : | |
| **HOWARD WILLIS** | : | |

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 04-269-16** |
| | : | |
| **DEREK RUSSELL** | : | |

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NOS. 06-205-3 & 06-207-1** |
| | : | |
| **SAMUEL FREEMAN** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                    **September 30, 2019**

Three men presently serving mandatory minimum sentences for possession and distribution of crack cocaine ask us to reduce their sentences because Section 404 of the First Step Act of 2018 allows district court judges to reduce crack cocaine mandatory minimum sentences based on the specific quantity. The men do not ask us to reduce their sentences for extraordinary and compelling reasons after first requesting relief from the Bureau of Prisons under Section 603 of the First Step Act. They instead argue we should interpret Section 404 of the First Step Act as making them eligible for reducing the mandatory minimums regardless of the quantity of crack cocaine involved in their conviction because Congress recognized the disparity in mandatory minimums between persons sentenced for crack cocaine as opposed to powder cocaine in 2010

.

but did not retroactively apply the new crack cocaine ranges for those sentenced before August 3, 2010. We must interpret the potential retroactivity provided in Section 404 of the First Step Act by comparing their sentences to persons sentenced for the same amount of crack cocaine after the Fair Sentencing Act of 2010. After analyzing the statutory text and legislative intent, we find the reduced mandatory minimum sentences in the Fair Sentencing Act may retroactively apply to those sentenced before August 3, 2010 if the actual amount of crack cocaine is either established in the indictment or in filed documents confirms eligibility. We will not find all charges are eligible based solely on the indictment's recital of the minimum amount then necessary for the mandatory minimum sentence. If we know the amount of crack cocaine in the conviction, why should we not sentence at this amount? We would do so for those sentenced after August 3, 2010.

Applying this standard, we deny the three men's motions for reduced sentences based on the mandatory minimums after August 3, 2010. Messrs. Willis and Freeman are not eligible for resentencing under Section 404. Mr. Russell is serving a life sentence for powder cocaine and nothing in Section 404 of the First Step Act changes this sentence.

# I

In the 1986 Anti-Drug Abuse Act, Congress set "mandatory minimum penalties of [five] and [ten] years applicable to a drug offender depending primarily upon the kind and amount of drugs involved in the offense."[1] The Act set five and ten year mandatory minimum penalties for crack cocaine and powder cocaine drug offenses but "treated crack cocaine crimes as far more serious."[2] To trigger the Act's ten-year mandatory minimum under 21 U.S.C. § 841(b)(1)(A), an offender must have possessed fifty or more grams of crack cocaine compared to 5,000 or more grams of powder cocaine.[3] The five-year mandatory minimum under 21 U.S.C. § 841(b)(1)(B)

2

applied to offenders possessing at least five but less than fifty grams of crack cocaine and offenders possessing at least 500 but less than 5,000 grams of powder cocaine.[4] The amount of crack or powder cocaine possessed relative to punishment "produc[ed] a 100–to–1 crack-to-powder ratio."[5]

During the next two decades, the United States Sentencing Commission, along with law enforcement and political bodies, "strongly criticized Congress' decision to set the crack-to-powder mandatory minimum ratio at 100–to–1."[6] The Sentencing Commission, concerned with the disparate sentences between powder cocaine and crack cocaine offenses and the discriminatory impact of the sentencing disparity, issued four separate reports urging Congress to reduce the ratio and to raise the quantity of crack cocaine triggering mandatory minimum sentences.[7] On August 3, 2010, Congress accepted the Commission's recommendation in the Fair Sentencing Act.[8]

The Fair Sentencing Act of 2010 reduced the mandatory minimum sentencing disparity for powder cocaine and crack cocaine from 100–to–1 to 18–to–1 by increasing the amount of crack cocaine triggering a mandatory minimum sentence.[9] The 2010 Act applied to sentences after August 3, 2010. Section 2(a) increased the crack cocaine amounts triggering the ten-year mandatory minimum from fifty grams to 280 grams.[10] Section 2(a) also increased the five-year mandatory minimum threshold from five grams to twenty-eight grams.[11] Section 3 eliminated the mandatory minimum for simple possession of crack cocaine.[12] While this radically changed the sentences for those sentenced on or after August 3, 2010, the Fair Sentencing Act did not affect those sentenced before August 3, 2010 because it did not direct courts to apply the quantity thresholds retroactively.

Eight years later, President Trump signed the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act or the "First Step Act" of 2018,[13] allowing courts to retroactively apply the Fair Sentencing Act's crack cocaine reductions to those sentenced

before August 3, 2010.[14]  The disputed languages in the First Step Act provides  "[a] court that imposed a sentence for a **covered offense** may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed."[15]  Section 404(a) of the First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010."[16]

Section 603 of the First Step Act offers defendants a separate opportunity to decrease their sentence.  Section 603 of the First Step Act modifies 18 U.S.C.A. § 3582, specifically 18 U.S.C.A. § 3582(c)(1)(A).  The modification allows defendants, after they exhaust "all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," to move the court themselves to reduce the terms of their imprisonment.[17]  A court may, under 18 U.S.C.A. § 3582(c)(1)(A)(i) find "extraordinary and compelling reasons" warranting a reduction in the defendant's sentence.[18]

Many persons sentenced under the Anti-Drug Abuse Act's original 100–to–1 crack cocaine ratio are now beginning to challenge their sentences under the First Step Act's retroactivity provision in Section 404.  We do not observe many challenges under Section 603.[19]  Nevertheless, faced with Section 404 challenges, courts must look to Section 404 to determine a challenger's eligibility for resentencing.  One aspect of eligibility is explicit: only persons sentenced before August 3, 2010 are entitled to relief.  But the other aspect of eligibility—the meaning of a "covered offense," which is the key phrase Congress uses to afford judicial discretion—is less clear.  So far, district courts have interpreted "covered offense" differently, resulting in diverging outcomes for whether a person is eligible for resentencing on a crack cocaine offense.

## II

United States District Courts do not uniformly interpret the Section 404(a)'s definition of "covered offense."[20] The split is based on different interpretive approaches to whether the dependent clause of Section 404(a) —"the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010"—modifies "violation" or "a Federal criminal statute."

One approach, termed the "indictment controls theory," interprets "a Federal criminal statute" to modify the dependent clause "the statutory penalties for which were modified . . . ."[21] Under this reading, courts look to the indictment to determine whether the grand jury returned an indictment against the offender under the Anti-Drug Abuse Act's crack cocaine provisions in Section 841(b)(1)(A) or Section 841(b)(1)(B). If the grand jury charged the defendant with "[fifty] grams or more" or "[five] grams or more" of crack cocaine in the indictment, then the defendant is eligible for resentencing if sentenced before August 3, 2010 because the retroactively applied Fair Sentencing Act "modified" the quantities triggering the mandatory minimum for these offenses. A similar approach, termed "statute of conviction," interprets the definition similarly but finds "covered offense" applies to a conviction under pre-Fair Sentencing Act mandatory minimums for crack cocaine offenses.

The other approach, termed the "offense controls theory," interprets Section 404(a)'s dependent clause to modify the word "violation"; this approach reads "violation" to signify actual conduct—*i.e.*, the amount of crack cocaine involved in the underlying criminal proceedings. The only persons with "covered offenses" who can benefit from the First Step Act under this reading are those who possessed an amount of crack cocaine reduced from the ten to five year minimum (between 280 grams and five grams), removed from the five-year statutory minimum (between

twenty-eight and five grams), or removed from the mandatory minimum for simple possession (between five grams and one gram).

The person challenging his sentence has typically asked us to apply the indictment controls theory because it more readily provides a way for the judge to consider a resentence. The United States, when contesting these motions for sentence reductions, has generally asked us to apply the offense controls theory as it is more restrictive about which persons are eligible for a possible sentence reduction before a judge considers the sentencing factors of 18 U.S.C. § 3553.

## A

The First Step Act authorizes courts to "reduce" sentences for "covered offenses."[22] The "indictment controls" approach interprets "covered offenses" to be the relevant crack cocaine amount charged in the indictment. Courts interpreting the statute in this way look to four main points. First, courts interpret the definition of "covered offense" under the "nearest-reasonable-referent canon" and conclude the dependent clause—"the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010"—modifies "the closer noun phrase 'Federal criminal statute' and not the more distant word 'violation.'"[23] A second reason to support a finding of broad eligibility is a perceived congressional intent in the First Step Act to lower incarceration rates.[24] A third rationale is the rule of lenity, which reasons the First Step Act's retroactivity provision—if ambiguous—should be interpreted in favor of the defendants and be read for broader eligibility.[25] Finally, courts applying the indictment controls theory also now look to persuasive authority as a majority of courts in other Districts now apply the indictment controls method.[26] We review some of the indictment controls cases.

In *United States v. Simons*,[27] one of the first cases to appear in a district court for First Step Act resentencing, Judge Jack Weinstein set the stage for the indictment controls approach.[28] On

6

July 8, 2008, Mr. Simons pled guilty to eighteen counts of drug conspiracy and distribution charges as well as carrying a firearm in relation of drug trafficking crime.[29] During a *Fatico* hearing,[30] the court found Mr. Simons sold more than 500 grams of crack cocaine.[31] On March 27, 2009, the court sentenced Mr. Simons to the mandatory minimum of ten years imprisonment for conspiracy to distribute fifty grams or more of crack cocaine and two years to run consecutively for the firearm charge for a total of 144 months.[32] Mr. Simons moved under the First Step Act for resentencing.[33] Before addressing Mr. Simons' eligibility for a new sentence, Judge Weinstein reviewed the purpose of the First Step Act and heavily emphasized Congressional intent to reduce growing prison populations and the affiliated high costs of incarceration.[34]

Judge Weinstein then considered Mr. Simons' eligibility for a resentence. In this determination, Judge Weinstein looked to the indictment: "conspiracy to possess with the intent to distribute more than [fifty] grams of crack cocaine."[35] Judge Weinstein concluded Mr. Simons' "drug convictions are 'covered offenses.' He pled guilty to violations of 21 U.S.C. § 841(b)(1) and § 841(a)(1), for which the statutory penalties were modified by the Fair Sentencing Act."[36] Judge Weinstein noted Mr. Simons "admitted [in his guilty plea] that the conspiracy involved at least [fifty] grams of crack cocaine" but "[n]o other findings or admissions concerning drug weight were made with respect to this count of the indictment at the guilty plea."[37] Judge Weinstein explained "[s]tatutory penalties are determined by facts submitted to a grand jury, a trial jury, or established by a guilty plea."[38] Given Mr. Simons' penalties were not established in this way, Judge Weinstein reasoned the indictment could involve a quantity (between fifty and 280 grams) now subject to a five-year rather than ten-year mandatory minimum.

At resentencing, Judge Weinstein reduced Mr. Simons' conspiracy "to distribute more than [fifty] grams of crack cocaine" from the ten-year mandatory minimum to the five year mandatory

7

minimum.[39]  Mr. Simons had served 136 months of his 144 month sentence.[40]  In deciding to resentence, Judge Weinstein applied the well-known section 3553 factors and considered Mr. Simons' rehabilitation through various educational and drug treatment programs he completed while incarcerated.[41]  He also considered Mr. Simons' had "maintained close relationships with his family while in custody."[42]  Judge Weinstein reduced Mr. Simons' sentence to time served.[43] He believed Mr. Simons' time in prison (more than eleven years) satisfied the goals of punishment without undermining the deterrence factor.[44]

Judge Jed Rakoff of the United States District Court for the Southern District of New York applied the indictment controls theory in *United States v. Martinez.*[45]  In *Martinez*, a jury convicted Mr. Martinez with conspiracy to distribute and possess with intent to distribute "[fifty] grams or more" of crack cocaine.[46]  During sentencing, the court made a formal finding Mr. Martinez's actual offense totaled 150 kilograms.[47]  Mr. Martinez moved for a reduced sentence in March 2019 under the First Step Act, arguing for his eligibility under Section 404 of the Act.[48]  Mr. Martinez asked for a reduction down to 240 months from his 360 months of imprisonment.[49]  He argued under the indictment controls theory because the grand jury only charged "[fifty] grams or more" of crack cocaine in his indictment.[50]  The United States argued Mr. Martinez's actual conduct governed, which precluded him from a resentence because the Fair Sentencing Act did not change the mandatory minimum for 150 kilograms (150,000 grams) of crack cocaine.[51]  But Judge Rakoff agreed with Mr. Martinez and concluded "the phrase 'violation of a Federal criminal statute' refers to the amount charged in the indictment upon which [Mr.] Martinez was convicted, not the amount attributed to him by judicial finding."[52]  Judge Rakoff based his eligibility finding both on his plain reading of the Act and on the Court of Appeals' decision in *United States v. Whitmore.*[53]  He reduced Mr. Martinez's sentence to 288 months' imprisonment.[54]

In *United States v. Easter*,[55] Judge Sylvia Rambo of the United States District Court for the Middle District of Pennsylvania also applied the indictment controls theory. Judge Rambo explained: "Congress did not direct district courts to consider what the United States might have charged had the FSA been in effect at the time the offense was committed, but rather authorized courts to reduce the sentence of a defendant 'as if sections 2 and 3 of the [FSA] were in effect at the time the offense was committed.'"[56] Judge Rambo found eligibility because Mr. Easter's indictment only stated "50 or more grams" of crack.[57] But Judge Rambo, unlike Judge Weinstein in *Simons* or Judge Rakoff in *Martinez*, did not use her discretion to resentence because the court, during original sentencing, found Mr. Easter responsible for 343.55 grams of crack cocaine.[58] Judge Rambo remarked: "[t]he First Step Act authorizes sentence reductions where retroactive application of the [Fair Sentencing Act]'s higher mandatory minimum penalty triggering quantities would allow the court to reduce the sentence below the previously applicable mandatory minimum."[59] Thus, Judge Rambo reasoned because 343.55 grams of crack cocaine still warrants a ten-year mandatory minimum sentence, she did not have grounds to resentence. Judge Rambo looked to the sentencing documents to find the actual offense.

## B

Like the indictment controls theory, other district courts interpret the retroactivity provision to be a "statute of conviction" and therefore consider resentencing appropriate for any offender convicted under the pre-2010 Anti-Drug Abuse Act's mandatory minimum sentencing. In *United States v. Davis*, a grand jury returned an indictment charging Mr. Davis with conspiracy to possess with an intent to distribute 500 grams or more of cocaine and fifty grams or more of cocaine base.[60] Mr. Davis' earlier drug conviction subjected him to an increased penalty of a mandatory minimum sentence of 240 months.[61] Mr. Davis pled guilty to his indictment charge and admitted the United

States would be able to prove his actual conduct included between 1.5 kilograms and 4.5 kilograms of cocaine base.[62] In February 2019, Mr. Davis moved for immediate release from prison under Section 404 of the First Step Act.[63] The United States argued the First Step Act did not apply to Mr. Davis because his actual offense involved an amount of cocaine base between 1.5 kilograms and 4.5 kilograms, which is above the new 280-gram threshold.[64] Judge Skretny rejected this offense controls argument because "it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."[65] The court explained under the plain language of the First Step Act, a "'covered offense'" is understood by looking at the statute a defendant violated.[66] If the statute is one in which the penalties were changed by section 2 or section 3 of the Fair Sentencing Act, then it should be understood as a "covered offense," and the First Step Act applies.[67] Judge Skretny explained Mr. Davis is eligible because his conviction included a guilty plea of conspiracy with intent to distribute *fifty grams or more of cocaine*, and under the First Step Act, the quantity of fifty grams or more is a covered offense because it does not exceed the 280 gram threshold set in the Fair Sentencing Act provisions.[68] The court deemed Mr. Davis eligible for relief under the First Step Act because he committed a covered offense (50 grams or more of cocaine base) before August 3, 2010.[69]

Chief Judge Robert Jonker of the United States District Court of the Western District of Michigan also interpreted the First Step Act as a "statute of conviction" in *Boulding v. United States*.[70] On October 3, 2008, a jury convicted Mr. Boulding of: (1) conspiracy to distribute, and to possess with intent to distribute, fifty grams or more of crack cocaine and (2) possession with intent to distribute five grams or more of crack. The presentencing report identified Mr. Boulding responsible for 650.4 grams of crack cocaine. The sentencing guideline range was 360 months to life. But the statutory mandatory minimum required a life sentence.[71] Because of the mandatory

minimum, the court sentenced Mr. Boulding for life. In May 2019, Mr. Boulding moved for sentence reconsideration under the First Step Act. The court found Mr. Boulding eligible for a reduced sentence because his violation "was committed before the Fair Sentencing Act's enactment on August 3, 2010; he was further convicted under the enhanced penalties found in Sections 841(b)(1)(A)(iii) and 841(b)(1)(B)(iii); and those penalties were 'modified by section 2 . . . of the Fair Sentencing Act of 2010.'"[72] The court then re-evaluated his sentencing guidelines, which now were reduced from a range of 360 months to life to a range of 292 months to 365 months. In resentencing, the court reduced Mr. Boulding's sentence to a term of years.[73]

C

A third approach is the "offense controls" theory. Courts using this theory look to an offender's actual conduct *i.e.*, the amount of crack cocaine attributed to the offender. These courts reason "violation of a Federal criminal statute" is modified by "the statutory penalties for which were modified" by the Fair Sentencing Act. The result of this reading is only the following "violations" are eligible for resentencing:

| Actual Quantity of Crack Cocaine in "Violation"? | Did Fair Sentencing Act Reduce Mandatory Minimum Sentence? | Eligible for Resentencing? |
|---|---|---|
| 280 grams or more: | No. | No. |
| Between fewer than 280 grams and 50 grams: | Reduction from ten-year mandatory minimum (§ 841(b)(1)(A)) to five-year mandatory minimum (§ 841(b)(1)(B)). | Yes. |
| Between fewer than 50 grams and 28 grams: | No. | No. |
| Between fewer than 28 grams and 5 grams: | Removed from five-year statutory minimum (§ 841(b)(1)(B)). | Yes. |
| Fewer than 5 grams: | Potentially moved out of mandatory minimum of § 844(a). | Yes. |

11

Thus, the offense controls theory only finds eligibility if the actual amount of crack cocaine attributed to the defendant is: (1) between 280 and fifty grams; or (2) fewer than twenty-eight grams.

Judge Robert Hinkle of the United States District Court for the Northern District of Florida applied the offense controls theory in *United States v. Blocker*.[74] In 2007, Mr. Blocker pleaded guilty to: conspiracy to manufacture, distribute, or possess with intent to distribute 500 grams or more or powder cocaine and fifty grams or more of crack (count one); distributing five grams or more of crack (count three); and possessing with intent to distribute five grams or more of crack (count four).[75] The presentence report determined Mr. Blocker responsible for a total of 907 grams of crack cocaine. Mr. Blocker received the minimum twenty-year sentence for count one and a concurrent twenty-year sentence for counts three and four, which is a downward variance from his career-offender guideline range.[76] Mr. Blocker moved to reduce his sentence under the First Step Act arguing he is entitled under the Act because of "retroactive changes in the penalty range" for his crack cocaine offense.[77] The United States argued it could have proved Mr. Blocker responsible for at least 400 grams of crack, which is above the new 280-gram threshold under the Fair Sentencing Act.[78]

Judge Hinkle found the indictment controls theory "misreads the statute and is demonstrably inconsistent with Congress's intent."[79] Judge Hinkle first interpreted the plain meaning of the First Step Act's definition of "covered offense":

> The word "which" in th[e] definition of "covered offense" modifies "violation of a Federal criminal statute." The "violation" of the criminal statute is the criminal conduct; the violation is not the indictment. The penalty range for a "violation" involving 400 grams of crack—the minimum amount the government says was involved in Mr. Blocker's count one—was 20 years to life, both before and after adoption of the Fair Sentencing Act; the Act did not change this penalty range. Similarly, the penalty range for a

12

"violation" involving 32.1 or 39.4 grams of crack—the amounts involved in Mr. Blocker's counts three and four—was 10 years to life; again, the Act did not change this penalty range.

To be sure, the penalty ranges corresponding to the *indictment* changed, even on the government's view of the facts. But the statute does not define a "covered offense" as one resulting in an indictment corresponding with a change in the penalty range. The statute defines a "covered offense" as a "violation"—a crime—for which the penalty range changed. On the government's view of the facts, the penalty range for Mr. Blocker's crimes did not change.

In short, the statute defines "covered offense" by reference to the "violation," not by reference to the "indictment."[80]

Judge Hinkle then addressed Congress's intent based on reports sent to Congress. He noted "[w]hen the First Step Act was under consideration, the United States Sentencing Commission estimated that the Act would make 2,660 prisoners eligible for a sentence reduction."[81] Judge Hinkle explained the 2,660 prisoner estimate is based on the offense controls theory and not on the indictment controls theory because the number of eligible prisoners would be much larger under the indictment controls theory.[82] Judge Hinkle reasoned Congress "undoubtedly" took the Commission's estimate into account when debating the Act's merits.[83]

Judge Hinkle also reasoned widespread eligibility for resentencing would result in disparate sentencing between those sentenced before and after the Fair Sentencing Act. "The First Step Act was intended to make the Fair Sentencing Act's drug-quantity changes available to defendants who were sentenced before that Act took effect—to eliminate the disparity between earlier and later crack defendants. The indictment controls theory would not eliminate disparity but instead would introduce enormous disparity in the opposite direction, giving earlier crack defendants a lower penalty range not available to later crack defendants."[84] Judge Hinkle reasoned widespread resentencing would only increase the disparity because those charged with "50 or more grams" before the Fair Sentencing Act could receive a reduction in their sentence if their violation

exceeded 1.5 kilograms; but a defendant with a 1.5 kilogram sentence today would be subject to the mandatory minimum penalties.

Judge Michael Baylson of our District agreed with Judge Hinkle and applied the offense controls approach in *United States v. Jackson*Sect[85] In *Jackson*, a jury convicted Mr. Jackson with two counts of possession with intent to distribute more than five grams of crack cocaine, or approximately forty-eight grams.[86] At the time, the mandatory minimum sentence was five years with an eight-year term of supervised release. Due to the career offender label, Mr. Jackson's sentencing guideline range was 262-327 months. Judge Baylson sentenced Mr. Jackson to 300 months' imprisonment plus eight years of supervised release. Mr. Jackson moved under the First Step Act for resentence.

Like Judge Hinkle in *Blocker*, Judge Baylson interpreted the word "violation" to be modified by "statutory penalties for which were modified" by the Fair Sentencing Act of 2010. Judge Baylson then at length reviewed the meaning of "violation" in the context of the Act.[87] He looked to Black's Law Dictionary defining "violation" as "the act of breaking or dishonoring the law."[88] Judge Baylson also explained: "[i]f instead of 'violation,' Congress had used the word 'indictment' or 'conviction,' then Defendant's argument that he is entitled to a sentence reduction would have much greater logic in terms of statutory construction."[89] He concluded by defining "covered offense" as a "violation," the eligibility is determined on the "conduct underlying the offense."[90]

Considering the actual amount of forty-eight grams, Judge Baylson concluded Mr. Jackson would still have been subject to the five-year mandatory minimum because the amount still exceeds the new threshold of twenty-eight grams. He considered the resulting sentencing disparity if he found Mr. Jackson is no longer subjected to the five-year mandatory minimum but held a

similarly situated defendant today who is sentenced for forty-eight grams of crack cocaine is subject to the five-year mandatory minimum standard. "[T]he [c]ourt cannot conclude that Congress intended an outcome that would give drug offenders a break just because they committed a 'violation' before the Fair Sentencing Act was enacted." Judge Baylson denied Mr. Jackson's motion for resentencing.

In the last week, Judge Harvey Bartle of our District agreed with the Judge Baylson's reasoning in *United States v. Nixon*.[91] In 1993, a grand jury returned an indictment charging Mr. Nixon and four co-defendants with "conspire[ing] to distribute 'more than [fifty] grams' of crack, in violation of 21 U.S.C. §§ 841(a)(1) and 846.[92] A jury convicted Mr. Nixon of the offense after a three-week trial.[93] In the presentence report, the United States Probation Office determined Mr. Nixon "was responsible for distribution of 12.5 kilograms of crack."[94] At sentencing, Judge Bartle found Mr. Nixon responsible for a minimum of 1.5 kilograms of crack cocaine and sentenced him to life in prison.

Mr. Nixon moved for a resentencing under the First Step Act. He argued judge Bartle should "consider only the statutory minimum quantity of crack for which he was charged and convicted [fifty or more grams] to determine his eligibility for resentencing."[95] The United States argued Judge Bartle should look to the amount the court identified during sentencing (1.5 kilograms), an amount exceeding the increased 280 gram-threshold, and conclude Mr. Nixon would still be subject to a mandatory minimum sentence of ten years and a maximum sentence of life under § 841(b)(1)(A). Judge Bartle, persuaded by Judge Baylson's reasoning, agreed with the United States.[96] Judge Bartle concluded: "[t]he word 'violation' refers to the factual conduct underlying the offense, not the fifty-gram minimum charged in the indictment."[97] Looking to Mr. Nixon's actual conduct at sentencing, Judge Bartle recognized Mr. Nixon "remains subject to the

same mandatory minimum penalty both before and after the First Step Act."[98] He denied Mr. Nixon's motion.

## III

Our experience in this District may be unique because our grand juries return indictments charging a criminal defendant with a specific quantity of crack cocaine. We are guided by the decisions of our colleagues Judges Baylson, Bartle, and Beetlestone finding the discussion between the "indictment controls approach" and the "offense controls approach" is "immaterial" because, in the Eastern District of Pennsylvania, the grand jury generally charges a criminal defendant with a specific quantity of crack cocaine in the indictment. In *Jackson*, Judge Baylson concluded his analysis by stating "[e]ven if the 'indictment controls theory' were correct, and the [c]ourt could only consider the statutory minimum charged in the Superseding Indictment, Defendant would still not be eligible for a sentencing reduction" because the indictment specified an amount not eligible for a sentence reduction under the Fair Sentencing Act. [99]

Judge Bartle ruled similarly in *United States v. Rogers*. [100] Mr. Rogers moved for resentencing under the First Step Act after pleading guilty to charge of conspiring to "distribute [fifty] grams or more, that is [fifteen] kilograms of crack."[101] Because the grand jury charged the defendant with a quantity of crack cocaine exceeding 280 grams, Judge Bartle found the defendant could not be eligible for resentencing under either the offense controls or indictment controls theory.[102] He concluded: "Because the statutory penalty applicable to this crime was not altered, he is not entitled to relief under the First Step Act."[103]

In *United States v. Mainor*,[104] Judge Beetlestone determined eligibility by looking to the amount charged in the indictment. The grand jury charged Mr. Mainor for possession of "6.5 grams of crack," which at that time, triggered the five-year mandatory minimum.[105] Because the

16

Fair Sentencing Act moved a 6.4 gram offense out of the statutory minimum, Judge Beetlestone considered Mr. Mainor eligible for resentencing. But Judge Beetlestone did not resentence because Mr. Mainor's other offenses involving powder cocaine did not provide grounds for a reduction.

We agree with our colleagues. Whether we apply the indictment controls theory or the offense controls theory, we are generally guided in this District by the actual amount charged against the offender. With the information in the indictment alone, we can determine whether an offender would have been charged with a ten-year or five-year mandatory minimum under the post-Fair Sentencing Act violation quantities of 280 grams and fifty grams, respectively. With this information, we can look to the indictment and not only have a pretty good idea of the actual violation, but we know the exact quantity charged against the defendant. Under either theory, we may assess eligibility based on the indictment if the indictment charges a quantity.

## IV

We are instructed by Judge Bartle's *Nixon* opinion in acknowledging we may—even in this District—face a motion for resentence where the indictment does not reveal the amount of crack cocaine charged to the defendant. Thus, we must interpret Section 404 "Application of Fair Sentencing Act" to determine whether we read the Act consistent with the indictment controls theory, the statute of conviction theory, or the offense controls theory. We also interpret its meaning under the offense controls theory.

When interpreting a statute, our "primary purpose . . . is to discern legislative intent."[106] In most cases, "[t]he plain meaning of legislation should be conclusive[.]" [107] "[I]t's a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking

their ordinary . . . meaning . . . at the time Congress enacted the statute.'"[108] "We look to the statutory provision's language and to the ordinary meaning of the words it uses."[109]

Consistent with these canons, we first look to the text. As addressed before, Section 404(b) allows us to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed."[110] A "covered offense" is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 that was committed before August 3, 2010."[111]

We agree with Judges Hinkle, Baylson, and Bartle in their plain readings of Section 404. We read "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010" to modify "violation" or "violation of a Federal criminal statute."

Our reading is first based on the ordinary meaning of the words chosen by Congress. According to Black's Law Dictionary, "violation" means "[t]he act of breaking or dishonoring the law."[112] Like Judge Baylson and Judge Bartle, we interpret "the act of breaking" the law as "the facts or conduct underlying defendant's arrest and conviction and not simply the words of the indictment or statute."[113] We agree with Judge Baylson it is significant Congress used "violation" and not "conviction" or "indictment."[114]

We are also persuaded by the plain meaning of "statutory penalties." Black's Law Dictionary defines penalty as a "punishment imposed on a wrongdoer, usu. in the form of imprisonment or fine;" a statutory penalty is "[a] penalty imposed for a statutory violation."[115] We find Congress clearly wrote "statutory penalty" to refer to the mandatory minimum sentences provided in §§ 841(b)(1)(A) and 841(b)(1)(B).

When assessing *which statutory penalties Congress modified* when enacting the Fair Sentencing Act, we are further persuaded "statutory penalties for which were modified" must

modify the word "violation." We know Congress did not modify the "statutory penalties" of Section 841(b)(1)(A) or Section 841(b)(1)(B) when enacting the Fair Sentencing Act— offenders faced a ten-year mandatory minimum or five-year mandatory minimum, respectively, before and after the Fair Sentencing Act for violations of these sections of the United States Code. Nonetheless, the Fair Sentencing "modified" the "statutory penalties" for violations within certain crack cocaine quantities: notably, (1) fewer than 280 grams but more than fifty grams no longer warrants ten-year mandatory minimum sentence; and, (2) fewer than twenty-eight grams but more than five grams no longer warrants a five-year mandatory minimum sentence. "Statutory penalties for which were modified" must refer to the "violation"—the quantity—which may now face a different mandatory minimum sentence.

We are further persuaded when considering the parallel uses of "violation" and "penalty" in the First Step Act as in the United States Code. The United States Code, 21 U.S.C. § 841(b)(1)(A), provides:

> **(b) Penalties** Except as otherwise provided in section 849, 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:
>
> **(1) (A)**In the case of a **violation** of subsection (a) of this section involving—
>
> [...]
>
> **(iii)** 280 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;
>
> [...]
>
> such person shall be sentence to a term of imprisonment which may not less than 10- years or more than life ...[116]

Section 841(b)(1)(B)—providing the five-year mandatory minimum—is structurally similar.[117] We observe under the subsection defining "violations," we see the specific amount of the drug offense triggering the "penalty." Under the "penalties," we see the mandatory minimum sentence of ten years.

We find the plain meaning is clear: "violation of a Federal criminal statute" is modified by "statutory penalties for which were modified" by the Fair Sentencing Act. The plain meaning of these words supports this reading. The Fair Sentencing Act did not modify statutory mandatory minimums (penalties), it only changed the quantity (violation) triggering mandatory minimum sentences. The terms "statutory penalties" and "violation" are uniformly used in the United States Code and the First Step Act which retroactively applies a modification to the United States Code.

Congress directs us to look to the actual amount of crack cocaine attributed to the offender to determine whether he presents a "covered offense." Once we determine the actual amount, Congress directs if the actual amount would not have been met with a "modified statutory penalty," then Congress does not grant us discretion to resentence. We find this the plain and sensible reading.

Even though we find the plain meaning clear, we look to legislative history to ensure our reading is consistent with Congress's intent. The legislative history of the First Step Act regarding the retroactive application of the Fair Sentencing Act does not specify the eligibility requirements. The House of Representatives and the Senate fail to define "covered offenses." But the House of Representatives and the Senate agree the Fair Sentencing Act is retroactive to "discriminatory drug laws."[118]

The Senate offers more clarity than the House about the First Step Act's intent. Senator Cardin argued the Act addressed the disparity issue between cocaine and crack sentencing in the

20

Fair Sentencing Act by increasing the quantity of base cocaine needed to trigger a mandatory minimum.[119] He also argued the First Step Act allows individuals affected by the disparity to petition for a reduced sentence.[120] Senator Durbin argued only those sentenced under the "100 to 1" law are eligible for the opportunity to be resentenced.[121] Senator Feinstein argued the retroactive application of the Fair Sentencing Act allows "people sentenced under the old standard" to ask "to be resentenced under the new one."[122] Since Congress negotiated the 100-to-1 ratio down to 18-to-1, offenders serving time under the old sentencing guidelines should have the opportunity to seek a sentence based on the new sentencing guidelines in effect under the Fair Sentencing Act. The Senate also discussed the large amount of discretion granted to judges under the First Step Act. Senator Durbin claimed judges have the discretion to determine when the harshest sentences apply.[123] This legislative history does not disrupt our reading of Section 404.[124]

## V

Defendants raise constitutional concerns with the offense controls theory. Defendants contend "[t]o set the defendant's statutory range under Section 404(b) based on an uncharged quantity found by the judge by a preponderance of the evidence recited in the [presentence report] would violate the Sixth Amendment."[125] Defendants argue *Apprendi v. New Jersey*[126] and *Alleyne v. United States*[127] require a fact increasing the mandatory minimum penalty for a crime to be submitted to a jury and proved beyond a reasonable doubt.[128] The United States responds *Apprendi* and *Alleyne* do not apply to resentencing under the First Step Act because the Act does not permit a court to increase a sentence.[129] The United States also reminds us the grand juries in this District return indictments identifying the actual quantity in the indictment, which "eras[es] any *Apprendi/ Alleyne* issue."[130] We agree with the United States.

In *Apprendi*, the Supreme Court examined the constitutionality of a New Jersey statute allowing a trial judge to enhance—without formal indictment—the mandatory sentence range for second-degree offenses if a preponderance of the evidence revealed the defendant's crime targeted a victim's "race, color, handicap religion, sexual orientation or ethnicity."[131]  In 1994, Charles Apprendi fired "several .22-caliber bullets into the home of an African American family"—and, afterwards, stated he did so "because they [were] black in color [and did] not want them in the neighborhood."[132]  A New Jersey grand jury returned a twenty-three count indictment charging Mr. Apprendi with violent shooting charges and the unlawful possession of weapons.  But the grand jury did not charge Mr. Apprendi with a hate crime.  Mr Apprendi pled guilty to firearm charges. The state trial judge instructed Mr. Apprendi on the mandatory minimum associated with such charges—between five and ten years—and accepted Mr. Apprendi's plea.

The prosecutor then sought an extended term under New Jersey's "hate crime" sentencing enhancement statute, arguing Mr. Apprendi targeted the victims based on their race.  The trial judge ordered a hearing on the sentencing enhancement.  After reviewing the evidence, the trial judge concluded a preponderance of the evidence supported the assertion Mr. Apprendi committed a hate crime and enhanced the sentence under the hate crime law.  Mr. Apprendi challenged the constitutionality of the enhancement because the prosecutor did not charge him with the increased hate crime maximum sentence in the indictment.

The Supreme Court agreed with Mr. Apprendi.  The Court reasoned the Fourteenth Amendment right to due process and Sixth Amendment right to a jury trial required Mr. Apprendi prosecutors to charge Mr. Apprendi with the hate crime.  The trial judge could not merely find the sentence enhancement by a preponderance of the evidence.  A state must charge a criminal defendant with the maximum sentence in the indictment.

Eleven years later in *Alleyne*, the Supreme Court considered whether a judicial finding of an element of a crime raising a mandatory minimum sentence by two years violated the Sixth Amendment right to a jury trial. The United States charged Mr. Alleyne under a federal law requiring a five-year mandatory minimum if a defendant "uses or carries a firearm" during "a crime of violence" and a seven-year sentence if the defendant "brandished" the firearm.[133] A jury convicted Mr. Alleyne. The jury indicated on the verdict form Mr. Alleyne "[u]sed or carried a firearm during and in relation to a crime of violence," but did not find Mr. Alleyne "[b]randished" the firearm.[134] Nevertheless, a presentence report recommended a seven-year sentence reasoning Mr. Alleyne "brandished" the firearm. Mr. Alleyne objected to this recommendation on the constitutional grounds of his right to a jury trial. The trial judge overruled Mr. Alleyne's objection, found he "brandished" the firearm, and sentenced him to the higher seven-year sentence.

The Supreme Court examined whether the trial judge unconstitutionally increased the sentence. The Court ruled the trial judge's ruling violated Mr. Alleyne's constitutional rights, reasoning: "The Sixth Amendment provides that those 'accused' of a 'crime' have the right to a trial 'by an impartial jury.' This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt."[135] For Mr. Alleyne, this meant the element of the crime—"brandishing" a firearm—must have been proved to the jury. The United States did not prove the "brandishing" element to support imposing an increased sentence, and the court should not sentence a defendant without the jury making the finding.[136]

We understand why defendants invoke *Apprendi* and *Alleyne* in raising constitutional challenges to determining eligibility based on actual conduct, rather than an amount charged in an indictment. The Court in *Apprendi* and *Alleyne* addressed situations where a judge increased a sentence based on facts and charges not properly presented against the defendant. Defendants

attempt to analogize a judicial finding of a quantity of crack cocaine here to the situations in *Apprendi* and *Alleyne*. We do not see it as analogous.

The Supreme Court's decisions in *Apprendi* and *Alleyne* "prohibit judicial findings that increase the statutory penalty for a crime."[137] But a judge may not increase the statutory penalty for crack cocaine under the First Step Act's retroactivity provisions. The Court's reasoning in *Apprendi* and *Alleyne* does not apply to a district court's decision under the First Step Act because "[d]eclining to reduce a sentence is not tantamount to an increase, nor does this proceeding implicate Defendant's right to a jury trial."[138]

# VI

We turn now to the motions of three offenders who seek resentencing under Section 404 of the First Step Act. After review of the actual offenses known for Messrs. Willis and Freeman, we find they are not eligible for a reduction of the mandatory minimum under Section 404. There is no way of knowing Mr. Russell's actual offense level. He would be entitled to resentencing under Section 404. But he is serving a life sentence for powder cocaine offenses. We cannot reduce this life sentence and reducing the crack cocaine sentence under Section 404 will not alter his sentence.

### *Howard Willis*

On April 16, 2007, our grand jury indicted Mr. Willis with seven counts of distribution and possession of crack cocaine as well as conspiracy to distribute, possession of a firearm, and aiding and abetting.[139] The crack cocaine charges included:

- Count One: "[Harold Willis] conspired and agreed… to knowingly and intentionally distribute and possess with intent to distribute 50 grams or more, that is, approximately 360 grams, of a mixture and substance containing a detectable amount of cocaine base ("crack cocaine"), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)."[140]

- Count Three: "[Harold Willis] knowingly and intentionally distributed, and aided and abetted and willfully caused the distribution of, 50 grams or more, that is, approximately 123 grams, of a mixture and substance containing a detectable amount of cocaine base ("crack cocaine"), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)."[141]

- Count Four: "[Harold Willis] knowingly and intentionally distributed, and aided and abetted and willfully caused the distribution of, 50 grams or more, that is, approximately 122 grams, of a mixture and substance containing a detectable amount of cocaine base ("crack cocaine"), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)."[142]

- Count Five: "[Harold Willis] knowingly and intentionally distributed, and aided and abetted and willfully caused the distribution of, 50 grams or more, that is, approximately 115 grams, of a mixture and substance containing a detectable amount of cocaine base ("crack cocaine"), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)."[143]

- Count Six: "[Harold Willis] knowingly and intentionally distributed, and aided and abetted and willfully caused the distribution of, 50 grams or more, that is, approximately 53.3 grams, of a mixture and substance containing a detectable amount of cocaine base ("crack cocaine"), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)."[144]

- Count Seven: "[Harold Willis] knowingly possessed a firearm, that is: (1) a Cobray M-11 9 mm pistol, serial number 840000088, (2) a Taurus .40 caliber pistol, serial number SOC56967, (3) a Marlin .22 caliber rifle, serial number 19479136, (4) Remington 12 gauge Model 1100 shotgun, serial number DU 811568; and (5) Winchester 12 gauge Model 1400 shotgun, serial number N821871; and ammunition for these firearms, in furtherance of a drug trafficking crime . . . in violation of Title 21, United States Code, Section 841(a)(1). All in violation of Title 18, United States Code, Section 924(c)(1)."[145]

On January 16, 2008, Mr. Willis pleaded guilty to Count 1 (conspiracy), Counts 3-6 (distribution and possession with intent to distribute crack cocaine), and Count 7 (possession of firearm).[146] At the time, the mandatory statutory minimum sentences for Count 1 and Counts 3-6 were ten years imprisonment with a five-year minimum supervised release and the statutory maximum was life imprisonment.[147] For Count 7 (possession of firearm), the mandatory statutory minimum sentence was five year imprisonment served consecutively with five year supervised release and the statutory maximum was life imprisonment.[148] Judge Stengel could have imposed between a life imprisonment and a mandatory minimum of fifteen years imprisonment with five

25

years' supervised release sentence as the total mandatory statutory maximum. For Mr. Willis' drug offenses, the Sentencing Guidelines suggested a range of 87-108 months' imprisonment.[149]

On April 16, 2008, Judge Stengel, following the statutory mandatory minimums, sentenced Mr. Willis to 120 months' imprisonment for Counts 1, 3, 4, 5, and 6 to run concurrently and sixty months' imprisonment for Count 7 to run consecutively, for a total of 180 months' imprisonment.[150] Upon release, Judge Stengel imposed a five-year supervised release term for all counts to run concurrently.[151]

Mr. Willis now moves for resentencing[152] under the First Step Act and he requests a resentencing hearing.[153] He adds the sentencing guidelines have been reduced for his drug charges from a range of 87-108 months to a range of 70-87 months.[154] The United States opposes, arguing Mr. Willis is not entitled to relief under the First Step Act.[155] Mr. Willis also wants a hearing so his "defense counsel can present evidence and arguments in support of a lower sentence."[156] The United States argues a hearing is not required.[157] As of this date, Mr. Willis has spent roughly 140 months in prison of his 180-months sentence.

Mr. Willis is not eligible for a resentence under Section 404 of the First Step Act. Mr. Willis plead guilty to a conspiracy "to knowingly and intentionally distribute and possess with intent to distribute [fifty] grams or more, that is, approximately 360 grams" of crack cocaine. Because this quantity still exceeds the 280-gram threshold, Mr. Willis' offense would face a ten-year mandatory minimum sentence. Nevertheless, we note if Mr. Willis did not receive concurrent sentences for the 360-gram offense and his other four drug offenses, we would find eligible for a resentence. Mr. Willis plead guilty to possessing 123 grams, 122 grams, 115 grams, and 53.3 grams of crack cocaine. All four of these offenses, if found individually and not as a part of conspiracy, would be eligible offenses for resentencing because these individual violations have

been moved from the 280-gram ten-year minimum threshold to the fifty-gram five-year minimum threshold. Yet, Mr. Willis faces more than one individual charge. He is not eligible for resentencing under Section 404 of the First Step Act.

Mr. Willis wants a hearing so his "defense counsel can present evidence and arguments in support of a lower sentence."[158] The United States argues a hearing is not required.[159] We agree. The First Step Act does not require a hearing for a sentence reduction. Section 404(b) allows courts to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." As the United States contends, "Section 404 of the First Step Act does not contemplate reconsideration of the sentence, or alteration of any sentencing decision other than the application of the portions of Section 841(b)(1) amended by the Fair Sentencing Act of 2010."[160] Courts do not need to hold a hearing to reduce a sentence under the First Step Act.

In so holding, we follow Chief Judge Jonker in *Berry* affirming "the First Step Act does not provide for a plenary-resentencing."[161] In *Davis*, Judge Skretny agreed with the United States, who "maintain[ed] that the Act does not permit plenary resentencing, but rather, permits only the imposition of a reduced sentence."[162]

### *Derek Russell*

On February 9, 2005, a grand jury returned a twenty-four count second superseding indictment charging Derek Russell and several codefendants involved in a drug conspiracy.[163] The grand jury specifically charged Derek Russell with conspiracy to manufacture and distribute "more than five kilograms of a mixture and substance containing cocaine, a Schedule II controlled substance, and more than fifty grams of a mixture substance containing cocaine base" (Count One) and using a telephone for facilitating drug trafficking (Counts Twenty-Three and Twenty-Four).[164]

27

On December 16, 2005, a jury convicted Mr. Russell to Counts One, Twenty-Three, and Twenty-Four.[165] The conspiracy primarily engaged in the distribution of re-compressed kilograms of cocaine to areas including Pennsylvania, New York, and Florida.[166] Gerald Thomas and Kaboni Savage led this organization, and Mr. Thomas supplied Mr. Russell with drug so he could distribute the cocaine and cocaine base.[167]

In Mr. Russell's instant offense, Count One includes the conspiracy to manufacture and distribute more than fifty grams of crack cocaine and more than five kilograms of powder cocaine. There is no actual amount attributed to Mr. Russell's participation of cocaine base in the indictment or Presentence Investigation Report.[168] Under 21 U.S.C. § 841(b)(1)(A), Mr. Russell's mandatory minimum increased to life imprisonment because of Mr. Russell's two earlier drug convictions. Mr. Russell appealed his life imprisonment sentence, and our Court of Appeals affirmed the sentence.

Under 21 U.S.C. § 841(b)(1)(A), an offense involving fifty grams or more of crack cocaine or more than five kilograms of powder cocaine required a ten-year statutory minimum term and life imprisonment maximum term. Section 2 of the Fair Sentencing Act changes the threshold quantity from fifty to 280 grams for crack cocaine but left the quantity the same for powder cocaine. Before *and* after the Fair Sentencing Act amendments to 21 U.S.C. § 841(b)(1)(A), the statutory minimum is increased to twenty years if an individual committed a felony drug offense before their instant offense and increased to life imprisonment if the individual committed two or more earlier felony drug offenses.

Mr. Russell argues he is eligible for resentencing under the First Step Act because his crack cocaine offense would only trigger penalties under current § 841(b)(1)(B) and would not fall within increased penalties of § 841(b)(1)(A). Consistent with our interpretative approach, we look

to the record to determine the actual quantity of crack cocaine attributable to Mr. Russell. We find the record is inconclusive. The United States did not charge Mr. Russell with a specific quantity of crack cocaine in the indictment. The presentence report is devoid of any reference to the quantity of crack cocaine attributable to Mr. Russell. We do not see a specific quantity elsewhere; and the United States does not provide one in its briefing. Without a specific quantity in the record, we cannot determine whether Mr. Russell would still be subject to the increased penalties of § 841(b)(1)(A). We cannot assume the quantity exceeded 280 grams and would face the same statutory minimums today. We find Mr. Russell is eligible for a resentence.

We then use our discretion to determine if there are grounds for a resentence. We decline to exercise our discretion to reduce Mr. Russell's term of imprisonment because Mr. Russell is serving a life sentence for his powder cocaine offense. Congress did not change the threshold amount of powder cocaine required to trigger mandatory penalties under 21 U.S.C. § 841(b)(1)(A) in the Fair Sentencing Act. Moreover, Congress did not direct us to reconsider powder cocaine offenses under Section 404 of the First Step Act. Mr. Russell, in reliance on Section 401 of the First Step Act, argues the United States "may no longer seek an enhancement based on the defendant's prior 'felony drug offense.'"[169] But Section 401 does not apply retroactively to defendants convicted before August 3, 2010.[170] Even if we were to reconsider Mr. Russell's crack cocaine offense, he would still be subject to a life sentence for his powder cocaine conviction. Our discretion is limited; we cannot resentence Mr. Russell because he is serving a life sentence for powder cocaine.

As with Mr. Willis, the First Step Act does not require a hearing for a sentence reduction.

### *Samuel Freeman*

On April 26, 2006, our grand jury charged Samuel Freeman with one count of distributing five grams or more of cocaine base ("crack").[171] Later that day, a grand jury returned an indictment for Criminal No. 06-205, charging two individuals with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and attempted distribution of more than fifty grams of cocaine base in violation of 21 U.S.C. § 846.[172] In both cases, the grand jury returned superseding indictments adding new charges and defendants.

In May 2007, a grand jury returned a third superseding indictment, alleging all defendants charged in Nos. 06-205 and 06-207 participated in a single drug trafficking conspiracy and consolidating the drug charges in a conspiracy count to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. § 846.[173] The third superseding indictment included the substantive drug counts initially charged in Nos. 06-205 and 06-207 but added new charges and a new defendant.[174] The grand jury did not return, in the third superseding indictment, a specific amount of crack cocaine.[175]

In addition to being charged with conspiracy to distribute fifty grams or more of crack, Mr. Freeman was also charged with several substantive distribution counts and drug-related offenses.[176] Mr. Freeman and one co-defendant proceeded to trial. The trial lasted for thirteen days, and the United States presented coconspirator testimony, law enforcement testimony, physical evidence, and wiretap evidence.[177]

The United States' evidence established Mr. Freeman ran a crack distribution operation in Philadelphia from January 2002 to April 2006.[178] The jury found Mr. Freeman guilty of conspiracy to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. § 846, one count of distributing at least five grams of crack in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B),

one count of distributing at least fifty grams of crack in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2, and fourteen counts of using a communications facility in furtherance of a drug trafficking offense in violation of 21 U.S.C. § 843(b).[179]

The presentence investigation found the members of the conspiracy distributed approximately 4.5 kilograms of cocaine base, triggering a base offense level of 38.[180] Four offense levels were added because of Mr. Freeman's leadership role in the drug conspiracy, resulting in an offense level of 42.[181] His criminal history computation, accounting for Mr. Freeman's past convictions, established a criminal history category of V.[182] Based on a total offense level of 42 and a criminal history category of V, the guideline range for Mr. Freeman's imprisonment was 360 months to life.[183] Under 21 U.S.C. § 841(b)(1)(A), the statutory mandatory minimum sentence on the conspiracy count was ten years, and the maximum term was life imprisonment.[184]

At the sentencing hearing in November 2008, Judge Stengel granted a departure and applied a criminal history category of III, rather than V, to Mr. Freeman because Judge Stengel found category V overstated Mr. Freeman's criminal history.[185] The new category still produced a guideline range of 360 months to life. Judge Stengel sentenced Mr. Freeman to 360 months imprisonment.

Mr. Freeman appealed his conviction, and our Court of Appeals affirmed.[186] In March 2016, Mr. Freeman filed a *pro se* motion for reduction of sentence under 18 U.S.C. § 3582(c)(2) and the 2014 retroactive amendment to the Sentencing Guidelines, Amendment 782.[187] Judge Stengel denied the motion with prejudice because the amendment did not lower Mr. Freeman's applicable guideline range, which was still 360 months to life imprisonment, and Mr. Freeman remained ineligible not eligible for a reduction.[188]

The Clerk of Court transferred supervision of Mr. Freeman's matter to our docket after Judge Stengel retired. Mr. Freeman moved for appointment of counsel to seek a sentence reduction under amendments 750 and 782 to the Guidelines.[189] We denied Mr. Freeman's motion for appointment of counsel because Judge Stengel denied Mr. Freeman's motion for sentence reduction with prejudice.[190] In November 2018, Mr. Freeman *pro se* moved to set aside or vacate Judge Stengel's May 2016 Order denying his motion for a sentence modification or reduction.[191] We denied Mr. Freeman's motion to set aside or vacate the May 2016 Order because he presented the same arguments he presented in his motion for appointment of counsel, and he was not eligible for a sentence reduction based on the same reasons we stated in the 2016 order.[192]

Mr. Freeman appealed our ruling under 18 U.S.C. § 3742(a)(1).[193] The Court of Appeals affirmed on the basis the amendments do not impact Mr. Freeman's applicable guideline range and a sentence reduction would not be consistent with the Sentencing Commission's applicable guidelines. On February 25, 2019, Mr. Freeman *pro se* moved for a reduction of sentence under the First Step Act.[194]

Mr. Freeman moves to reduce his sentence under the First Step Act, arguing: (1) he is eligible for relief under Section 404 of the First Step Act; (2) "the district court violates the Sixth Amendment if it imposes a sentence based on a judge-found (and not a jury found) fact that increases a minimum sentence"; (3) the court should impose a sentence of time-served or a sentence reflecting his current guideline range of 97-121 months' imprisonment.[195]

The United States opposes, arguing: (1) Mr. Freeman is not eligible for relief under the First Step Act because application of the Fair Sentencing Act does not lower his statutory penalties; (2) even if Mr. Freeman is eligible under the First Step Act, we should deny him relief based on

the facts of this case; (3) *Apprendi* and *Alleyne* do not apply here because the First Step Act only authorizes a court to "reduce" a sentence and not to increase it.[196]

We look to Mr. Freeman's presentencing report where he was found "responsible for the distribution of approximately 4.5 kilograms of crack cocaine."[197] We cannot find him eligible for a resentence given this quantity. A defendant responsible for 4.5 kilograms (or, 4,500 grams) of crack cocaine is not eligible for a sentence reduction because the Fair Sentencing Act did not modify the statutory penalty for this violation. Congress did not give us this discretion to resentence under Section 404.

Mr. Freeman argues "there must be a hearing at which the defendant is present" and "Rule 43(a) requires the defendant's presence at sentencing."[198] The United States argues a hearing is not required.[199] As with Messrs. Willis, we decline to hold a hearing as we find Mr. Freeman is not eligible for resentencing under Section 404.

## VII

Our elected representatives have struggled since the mid-1980s in setting sentencing standards to deter the spread of cocaine and crack cocaine. In 1986, Congress set extraordinary disparities in sentencing between powder cocaine and crack cocaine. These sentencing disparities resulted in a one hundred to one differential in the terms of sentence for those persons convicted of crack cocaine offenses as opposed to powder cocaine. Twenty-four years later, Congress addressed this disparity through the Fair Sentencing Act of 2010 by substantially reducing the disparity in mandatory minimum sentences and maximum sentences for crack cocaine as opposed to powder cocaine for those sentenced after August 3, 2010. But Congress did not allow judges to apply these new standards retroactively for persons sentenced before August 3, 2010. Over eight years later, Congress as part of wide-ranging criminal reform, directed sentencing judges to

consider applying the sentencing standards for crack cocaine defined in the 2010 Fair Sentencing Act through Section 404 of the First Step Act enacted in December 2018.

Over the past nine months, courts have struggled to find a common understanding of the scope of Congress's allowance of sentence reductions for crack cocaine sentences before August 3, 2010. Congress's specific language is interpreted in varied ways basically breaking down on whether a judge views the language of the charging indictment which typically does not charge a specific gram or kilogram amount of crack cocaine should allow persons sentenced for a crack cocaine offense before August 3, 2010 to be eligible for resentencing based upon their rehabilitation. Other judges, including judges in this District where many of the indictments after 2002 identified the specific amount of crack cocaine at issue, focus on the actual number of grams or kilograms of crack cocaine as shown in the indictment or related charging documents.

After extensive oral argument presented by skilled advocates who are presenting similar arguments to many of our colleagues, we today decide whether we can ignore the demonstrated evidence of the exact amount of crack cocaine specifically identified in filed documents presented to the defendants either in the indictment returned by the grand jury or before sentencing. We join Judges Bartle and Baylson in not interpreting the First Step Act as automatically permitting the resentencing analysis for every person convicted of a crack cocaine offense before August 3, 2010. Rather, consistent with legislative history and the language of the First Step Act, we today find the First Step Act retroactivity in Section 404 applies to those persons who would have received different sentences had they been sentenced after August 3, 2010. In other words, courts would have known the exact amount of the crack cocaine involved in the offense and sentenced within the new ranges.

34

Our cases today involve sentences for three men convicted for crack cocaine offenses. We denied Section 404 eligibility to two of the men. Mr. Willis is not eligible because the United States charged him with a quantity of crack cocaine triggering the same statutory mandatory minimums before and after the Fair Sentencing Act. Mr. Freeman is not eligible because his presentencing report attributed to him an amount of crack cocaine well above the old and new thresholds to trigger the ten-year mandatory minimum. We cannot ignore the specific actual offenses by interpreting the First Step Act as allowing resentencing for every person regardless of the knowledge of the amount of crack cocaine identified in the charge. But we could not confirm the quantity of crack cocaine attributed to Mr. Russell. He is eligible for resentencing. But we cannot reduce Mr. Russell's mandatory minimum sentence because of a life sentence for a powder cocaine offense. We deny the three men's motions for reduction of sentence under the First Step Act in accompanying Orders.

---

[1] *Dorsey v. United States*, 567 U.S. 260, 266 (2012) (citing 21 U.S.C. § 841(b)(1)(A)-(C) (2006 ed. and Supp. IV)).

[2] *Id.* (citing 21 U.S.C. § 841(b)(1)(A)-(C) (2006 ed. and Supp. IV).

[3] *Id.* (citing 21 U.S.C. § 841(b)(1)(A)-(C) (2006 ed. and Supp. IV)

[4] *Id.* (citing 21 U.S.C. § 841(b)(1)(A)-(C) (2006 ed. and Supp. IV)

[5] *Id.* at 266.

[6] *Id.*

[7] *Id.* In *Dorsey,* Justice Breyer explained: "The Commission issued four separate reports telling Congress that the ratio was too high and unjustified because, for example, research showed the relative harm between crack and powder cocaine less severe than 100–to–1, because sentences embodying that ratio could not achieve the Sentencing Reform Act's 'uniformity' goal of treating like offenders alike, because they could not achieve the 'proportionality' goal of treating different offenders (e.g., major drug traffickers and low-level dealers) differently, and because the public had come to understand sentences embodying the 100–to–1 ratio as reflecting unjustified race-

based differences." *Id.* at 267 (citing *Kimbrough v. United States*, 552 U.S. 85, 97-98 (2007)) (other citations omitted).

**⁸** *Id.* at 268.

**⁹** *Id.* at 269. Congress did not reduce the amount of powder cocaine triggering mandatory minimum sentences. *Id.*

**¹⁰** Fair Sentencing Act of 2010, Pub. L. No. 111-220, §2(a).

**¹¹** *Id.*

**¹²** *Id.*

**¹³** S. 3747, 115th Cong.

**¹⁴** S. 3747, 115th Cong. § 404(b).

**¹⁵** S. 3747, 115th Cong. § 404(b) (emphasis added).

**¹⁶** S. 3747, 115th Cong. § 404(a).

**¹⁷** S. 3747, 115th Cong. § 603.

**¹⁸** 18 U.S.C.A. § 3582(c)(1)(A)(i).

**¹⁹** We observe only one court who has analyzed a prisoner's petition for resentencing under 18 U.S.C.A. § 3582(c)(1)(A)(i) since enactment of the First Step Act. In *United States v. Palacios*, No. 97-436, 2019 WL 3858584 (M.D. Fla. Aug. 16, 2019), Judge Kovachevich found Mr. Palacios failed to exhaust administrative remedies and could not move under 18 U.S.C.A. § 3582(c)(1)(A)(i). Judge Kovachevich dismissed his petition without prejudice. *Palacios*, 2019 WL 3858584 at *4.

**²⁰** We cannot find a court of appeals considering this question yet.

**²¹** *See, e.g., United States v. Rose*, 379 F. Supp. 3d 223 (S.D.N.Y. 2019).

**²²** S. 3747, §404(b).

**²³** *See e.g.*, *United States v. White*, No. 93-97, 2019 WL 3719006, at *13 (D.D.C. Aug. 6, 2019).

**²⁴** *Id.* at *15-16.

**²⁵** *See, e.g.*, *United States v. Thompson*, No. 05-42, 2019 WL 4040403, at *6 (W.D. Pa. Aug. 27, 2019).

**²⁶** *United States v. White*, No. 93-97, 2019 WL 3719006, at *16 (D.D.C. Aug. 6, 2019) (identifying indictment controls approach is used by majority of courts and citing to courts using this approach).

[27] *United States v. Simons*, 375 F. Supp. 3d 379 (E.D.N.Y. 2019).

[28] *Id.* While Judge Weinstein does not label his reasoning as following the indictment controls theory, his analysis follows the theory's line of reasoning.

[29] *Id.* at 382.

[30] A *Fatico* hearing allows a judge to determine whether disputed allegations in a government sentencing memorandum should be considered in the sentencing decision. *United States v. Fatico*, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979), *cert. denied*, 444 U.S. 1073 (1980).

[31] *Simons*, 375 F. Supp. 3d at 383.

[32] *Id.*

[33] *Id.* at 381.

[34] *Id.* Judge Weinstein explained: "Growing prison populations and the high costs of incarceration—averaging more than $ 30,000 per year for each prisoner in federal custody—were a motivating consideration for the Act." *Id.* at 385. Judge Weinstein also looked to this reason during resentencing: "In imposing a reduction of defendant's sentence, this court considered Congress's intention, first with the Fair Sentencing Act of 2010 and now with the First Step Act of 2018, to limit government spending on incarceration and to decrease the number of inmates in federal custody." *Id.* at 389.

[35] *Id.*

[36] *Id.* at 386 (internal citation omitted). Judge Weinstein also found eligibility because the court sentenced Mr. Simons before Congress enacted the Fair Sentencing Act and none of the First Step Act limitations applied. *Id.*

[37] *Id.* at 387.

[38] *Id.* Judge Weinstein added: "[f]indings by a judge, pursuant to a *Fatico* hearing, may be used to determine a sentence within the statutory penalties, but do not establish statutory penalties and cannot change the mandatory minimum sentence now applicable." *Id.*

[39] *Id.*

[40] *Id.* at 388.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.* at 389. The reduction "promotes respect for the law while reflecting society's changing views about incarceration and the need to avoid unwarranted sentencing disparities between similarly-situated defendants." *Id.*

[45] No. 04-48-20, 2019 WL 2433660 (S.D.N.Y. June 11, 2019).

[46] *Id.* at *1.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.* at *2.

[51] *Id.*

[52] *Id.*

[53] *Id.* In *United States v. Whitmore*, 573 F. App'x 24 (2d Cir. 2014), the Court of Appeals for the Second Circuit considered whether to remand a crack cocaine defendant's sentence following enactment of the Fair Sentencing Act. The United States charged Mr. Whitmore for fifty or more grams of crack cocaine under the pre-Fair Sentencing Act penalties because Mr. Whitmore's offense took place before the enactment of the Fair Sentencing Act. But *Dorsey v. United States*, 567 U.S. 260, 266 (2012) held courts must apply the Fair Sentencing Act even to offenses committed before the Act's enactment. In *Whitmore*, the United States argued, despite *Dorsey*, Mr. Whitmore "admitted responsibility for at least 1,100 grams" of crack cocaine in his plea agreement. *Whitmore*, 573 F. App'x at 25. Due to the undisputed plead amount, the United States argued Mr. Whitmore would be faced with the same sentence even under the Fair Sentencing Act. But the Court of Appeals disagreed. The Court of Appeals found "the offense charged in the indictment, upon which he was convicted, does not involve a sufficient quantity of cocaine base to trigger the twenty-year mandatory minimum under the post-[Fair Sentencing Act] penalty provision of § 841." *Id.* at 26.

[54] *Martinez*, 2019 WL 2433660 at *4.

[55] No. 07-153-02, 2019 WL 2602160 (M.D. Pa. June 25, 2019).

[56] *Id.* at *2.

[57] *Id.*

[58] *Id.* at *1.

[59] *Id.* at *2.

[60] *United States v. Davis*, No. 07-245, 2019 WL 1054554, at *1 (W.D.NY Mar. 6, 2019).

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.* at *2.

[65] *Id.*

[66] *Id.* at *3 (citing the First Step Act, § 404 (a)).

[67] *Id.*

[68] *Id.* Judge Skretny noted relief under the First Step Act is discretionary (citing § 404(c) stating "nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section"), and an Abbreviated Supplemental Presentence Report where a defendant's sentence is recalculated based on the new guidelines, as well as considerations of personal characteristics belonging to the defendant can be considered by a court when determining whether to modify a sentence under the Fair Step Act. *Id.*

[69] *Id.*

[70] 379 F. Supp. 3d 646 (W.D. Mich. 2019).

[71] 21 U.S.C. § 841(b)(1)(A) set a mandatory minimum of life sentence if a defendant had two earlier felony drug convictions.

[72] *Boulding*, 379 F. Supp. 3d at 654.

[73] Mr. Boulding had served 324 months.

[74] 378 F. Supp. 3d 1125 (N.D. Fla. Apr. 25, 2019).

[75] *Id.* at 1129-30.

[76] *Id.* at 1127.

[77] *Id.* at 1126.

[78] *Id.* at 1128 (noting the court finds the United States's argument does not "seal the deal").

[79] *Id.* at 1129.

[80] *Id.* at 1129.

[81] *Id.* at 1130 (citing U.S. Sentencing Comm's, *Sentence and Prison Impact Estimate S. 756*, *The First Step Act of 2018* (Dec. 18, 2018) (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/prison-and-sentencing-impact-assessments/December_2018_Impact_Analysis.pdf)).

[82] *Id.* Judge Hinkle reasoned under the indictment controls theory, "every crack defendant sentenced before the Fair Sentencing Act took effect would be eligible for a reduction." *Id.*

[83] *Id.*

[84] *Id.* at 1131.

[85] No. 03-0642, 2019 U.S. Dist. LEXIS 109993 (E.D. Pa. June 26, 2019), *appeal pending*, No. 19-2499 (3d Cir.).

[86] *Id.* at *6.

[87] *Id.* at *7-11.

[88] *Id.* at *7.

[89] *Id.* at *8.

[90] *Id.* at *6.

[91] No. 93-386-4, 2019 U.S. Dist. LEXIS 166359 (E.D. Pa. Sept. 25, 2019).

[92] *Id.* at *1.

[93] *Id.*

[94] *Id.* at *1-2.

[95] *Id.* at *6.

[96] *Id.* at *8.

[97] *Id.* at *7.

[98] *Id.* at *10.

[99] *Jackson*, 2019 U.S. Dist. LEXIS 109993, at *14.

[100] No. 08-41-1, 2019 U.S. Dist. LEXIS 126301 (E.D. Pa. July 25, 2019).

[101] *Id.* at *1.

[102] *Id.* at *6-7.

[103] *Id.* at *7.

[104] No. 06-140-1, 2019 WL 3425063, at *3 (E.D. Pa. July 30, 2019).

[105] *Id.* at *3.

[106] *Morgan v. Gay*, 466 F.3d 276, 277 (3d Cir. 2006).

[107] *Id.* (quotation omitted).

[108] *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (quoting *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018)).

[109] *Vorchheimer v. Philadelphia Owners Assoc.*, 903 F.3d 100, 104 (3d Cir. 2018) (citing *Artis v. District of Columbia*, 138 S. Ct. 594, 603 (2018)).

[110] Pub. L. No. 111-220, §2(a).

[111] *Id.*

[112] *United States v. Nixon*, No. 93-386-4, 2019 U.S. Dist. LEXIS 166359, at *8 (E.D. Pa. Sept. 25, 2019) (citing Black's Law Dictionary (11th ed 2019)).

[113] *Id.* (citing *Jackson*, 2019 U.S. Dist. LEXIS 109993, at *7-8).

[114] *Jackson*, U.S. Dist. LEXIS 109993, at *7-8.

[115] PENALTY, Black's Law Dictionary (11th ed. 2019).

[116] 21 U.S.C. §841(b) (emphasis added).

[117] *See generally id.*

[118] Dec. 18, 2018, Senate consideration and passage of S. 756 (115) and Dec. 20, 2018, House concurrence in Senate amendment to S. 756 (115).

[119] Dec. 18, 2018, Senate consideration and passage of S. 756 (115).

[120] Dec. 18, 2018, Senate consideration and passage of S. 756 (115).

[121] Dec. 17, 2018, Senate consideration of S. 756 (115).

[122] Dec. 18, 2018, Senate consideration and passage of S. 756 (115).

[123] Dec. 17, 2018, Senate consideration of S. 756 (115).

[124] We also find support for our plain reading from other sources within the legislative branch. The Congressional Research Service, a legislative branch agency within the Library of Congress, operates under direction of Congress providing both research and analysis on legislative proposals. Federal Courts have cited and referred to the Congressional Research Service. *See* 2 U.S.C. 166. In *City of Arlington v. FCC*, 569 U.S. 290 (2013) the Supreme Court dissent provided a Congressional Research Service report as an example to support their argument. The Congressional Research Service report entitled "The First Step Act of 2018: An Overview" argues inmates eligible for retroactive application of the Fair Sentencing Act are "currently incarcerated offenders who received longer sentences for possession of crack cocaine than they would have

received if sentenced for possession of the same amount of powder cocaine before the enactment of the Fair Sentencing Act." The First Step Act of 2018: An Overview (Mar. 4, 2019), https://fas.org/sgp/crs/misc/R45558.pdf. The report also states the court's ability to resentence "qualified prisoners as if the Fair Sentencing Act had been in effect at the time of their offenses." *Id.* While a defendant may argue the language in the First Step act suggests eligibility is based on the charge rather than actual conduct, the Congressional Research Service suggests eligibility is based on conduct. If a prisoner has the opportunity to be resentenced "as if" the Fair Sentencing Act had been in effect at the time of sentencing, their actual conduct determines the offense level.

[125] No. 07-205, ECF Doc. No. 102, at pp. 9-11.

[126] 530 U.S. 466 (2000).

[127] 570 U.S. 99 (2013).

[128] No. 07-205, ECF Doc. No. 102, at pp. 9-11.

[129] No. 07-025, ECF Doc. No. 104, at p. 12.

[130] No. 07-025, ECF Doc. No. 104, at p. 12.

[131] *Apprendi v. United States*, 530 U.S. 466, 469 (2000).

[132] *Id.*

[133] *Alleyne v. United States*, 570 U.S. 99, 103-04 (2013).

[134] *Id.* at 104.

[135] *Id.* at 104-05 (citing *United States v. Gaudin,* 515 U.S. 506, 510 (1995); *In re Winship,* 397 U.S. 358, 364 (1970)).

[136] *Id.* at 102.

[137] *Jackson*, U.S. Dist. LEXIS 109993, at *13 (quoting *United States v. Banuelos*, No. 02-084, 2019 WL 2191788 (D.N.M. May 21, 2019)).

[138] *United States v. Nixon*, No. 93-386-4, 2019 U.S. Dist. LEXIS 166359, at *8 (E.D. Pa. Sept. 25, 2019) (citing *Jackson*, 2019 U.S. Dist. LEXIS 109993 at *13).

[139] ECF Doc. No. 1. The seven counts include: (1) 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (conspiracy to distribute 50 grams or more of cocaine base ("crack")); (2) 21 U.S.C. §§ 841(a)(1), (b)(1)(B) (distribution of 5 grams or more of cocaine base ("crack")); (3) 21 U.S.C. §§ 841(a)(1), (b)(1)(A) (distribution of 50 grams or more of cocaine base ("crack")); (4) 21 U.S.C. §§ 841(a)(1), (b)(1)(A) (distribution of 5 grams or more of cocaine base ("crack")); (5) & (6) 21 U.S.C. §§ 841(a)(1), (b)(1)(A) (possession with intent to distribute 50 grams or more of cocaine base ("crack")); and (7) 18 U.S.C. § 924(c)(1)(A) (possession of a firearm in furtherance of a drug trafficking crime).

[140] ECF Doc. No. 1, at p. 1-2.

[141] *Id.* at p. 8.

[142] *Id.* at p. 9.

[143] *Id.* at p. 10.

[144] *Id.* at p. 11.

[145] *Id.* at p. 12.

[146] ECF Doc. No. 60 at 1.

[147] ECF Doc. No. 60 at 8.

[148] ECF Doc. No. 60 at 8.

[149] ECF Doc. No. 64 at 4.

[150] ECF Doc. No. 68 at 3.

[151] ECF Doc. No. 68 at 4.

[152] Mr. Willis previously *pro se* moved for modification of term of imprisonment on May 10, 2019. ECF Doc. No. 99. Afterward, he requested counsel. Then the Clerk of Courts reassigned the case to us. ECF Doc. No. 100. We granted Mr. Willis motion for counsel. ECF Doc. No. 103. Mr. Willis now moves for reconsideration. ECF Doc. No. 102. We will regard Mr. Willis' earlier motion for modification moot as his counsel has now moved for reconsideration.

[153] ECF Doc. No. 102.

[154] ECF Doc. No. 102 at 4. There is an additional 60 months for the firearm charge.

[155] ECF Doc. No. 104.

[156] ECF Doc. No. 102 at 14.

[157] ECF Doc. No. 104.

[158] ECF Doc. No.102 at 14.

[159] ECF Doc. No. 104.

[160] ECF Doc. No. 104.

[161] *United States v. Berry*, No. 09-05-02, 2019 WL 2521296, at *4 (W.D. Mich. June 19, 2019).

[162] *United States v. Davis*, No. 07-245, 2019 WL 1054554, at *2 (W.D. N.Y. March 6, 2019); *see also United States v. Boulding*, 379 F. Supp. 3d 646, 654 (W.D. Mich. 2019) ("If a court is not compelled to resentence an eligible defendant, it makes little sense for a court to be required to hold a plenary hearing, if the court does decide to act"); *United States v. Jones*, No. 05-29-1, 2019 WL 2480113, at *2 (E.D.N.C. June 11, 2019) ("The First Step Act permits the courts to impose a 'reduced sentence' and 'modify' the term of imprisonment under § 3582(c)(1)(B), but it does not 'expressly permit' full resentencing").

[163] ECF Doc. No. 448.

[164] PSR ¶ 2. Between February and April in 2001, twenty-four phone calls occurred involving Mr. Russell's brokered cocaine deals with Mr. Thomas. PSR ¶ 53. On December 1, 2000, Mr. Russell called Mr. Thomas about getting seven ounces of cocaine hidden in Mr. Thomas's bathroom sink. PSR ¶ 54. On January 17, 2001, Mr. Russell called Mr. Thomas about a potential customer asking about the pricing for a half-kilogram and a kilogram of cocaine, and Mr. Russell asked if he could charge "fifteen and make five." *Id.* (Meaning Mr. Russell could charge $15,000 and profit $500.) On February 8, 2001, Mr. Russell called Mr. Thomas because he needed a "great white", which is code for one kilogram of cocaine. *Id.* ¶ 56. On February 13, 2001, Mr. Thomas called Mr. Russell to tell him he would provide Mr. Russell and two others with eleven ounces of cocaine. *Id.* During a phone call on February 17, 2001, Mr. Russell asked Mr. Thomas for a "ten, powder." *Id.* Finally, on February 21 and 21, 2001, Mr. Russell had several phone calls to resolve a disagreement about drug territory. *Id.*

[165] *Id.* ¶ 4.

[166] *Id* ¶ 28.

[167] *Id.* ¶¶ 28, 91

[168] During trial, the jury found the quantity (at least 50 grams of crack) attributable to the conspiracy and to each defendant. ECF Doc. No. 1213 at 2, n.1.

[169] ECF Doc. No. 1212 at 1. Section 401 of the First Step Act made changes to types of offenses committed before an instant offence which can trigger sentence enhancements. The mandatory minimum for an instant offense with no earlier felony drug offenses is a ten-year sentence. Mr. Russell argues his sentence should be reduced as such. ECF Doc. No. 1212 at 1.

[170] *See United States v. Mainor*, No. 06-140-1, 2019 WL 3425063, at *3 (E.D. Pa. July 30, 2019).

[171] PSR ¶ 1.

[172] ECF Doc. No. 582 at p. 2.

[173] ECF Doc. No. 31.

[174] *Id.*

[175] ECF Doc. No. 215, at p. 2.

[176] ECF Doc. No. 215 at p. 2, 11, 14, 19, 22-39, 41-42.

[177] ECF Doc. No. 582 at p. 2.

[178] PSR ¶ 20.

[179] ECF Doc. No. 582 at p. 2.

[180] PSR ¶ 35.

[181] PSR ¶¶ 38, 43.

[182] PSR ¶ 54.

[183] PSR ¶ 79.

[184] PSR ¶ 78.

[185] ECF Doc. No. 582 at p. 3.

[186] *United States v. Freeman*, 405 F. App'x 584 (3d Cir. 2010).

[187] ECF Doc. No. 561. Amendment 782 lowered the base offense levels on the drug quantity table in U.S. SENTENCING GUIDELINES MANUAL § 2D1.1 for most drug offenses.

[188] ECF Doc. No. 565.

[189] ECF Doc. No. 567.

[190] ECF Doc. No. 569.

[191] ECF Doc. No. 570 at p. 1.

[192] ECF Doc. No. 571.

[193] 18 U.S.C. § 3742(a)(1).

[194] ECF Doc. No. 577.

[195] ECF Doc. No. 577 at 4-5.

[196] ECF Doc. No. 582.

[197] PSR ¶ 21.

[198] ECF Doc. No. 369 at p. 10.

[199] ECF Doc. No. 104.